UNITED STATES DISTRICT COURT

NEW JERSEY DISTRICT COURT

| | |
|---|---|
| ANNETTE MARTINEZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br>                    Plaintiff,<br><br>Burlington Stores, Inc.,<br>                    Defendant. | Case # _____<br><br>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiff ANNETTE MARTINEZ ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based upon her personal knowledge of her own acts and, otherwise, upon information and belief including based upon investigation of counsel.

<u>NATURE AND SUMMARY OF THE ACTION</u>

l.        Plaintiff, by and through undersigned counsel, brings this action both on her own behalf and on behalf of the class defined below, comprised of all individuals similarly situated to redress the unlawful commercial practices employed by Defendant Burlington Stores, Inc. a/k/a Burlington Coat Factory Warehouse Corporation (hereinafter "Defendant") regarding unlawful "Terms of Use" displayed on Defendant's website, www.burlingtoncoatfactory.com.[1] Specifically, and as detailed more fully below, Defendant's website contains a consumer contract (entitled "Terms of Use") that purports to impose illegal, exculpatory and other such provisions upon all users of that website and purports to nullify certain legal duties and responsibilities Defendant owes its consumers.

---

[1] Copy annexed hereto accessed on April 13, 2016 as Exhibit 1

1

2.      Defendant has imposed the unfair, one-sided provisions in its "Terms of Use" in violation of certain statutory and common law standards and New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNN'), N.J.S.A. 56:12-14 *et seq.*

PARTIES

3.    Plaintiff Annette Martinez is an individual adult and resides in West Haverstraw, Rockland County, New York, and is a member of the Class alleged herein.

4.    Plaintiff purchased various consumer products of the Defendant through Defendant's website, www.burlingtoncoatfactory.com,   recently and during the past 6 years. Plaintiff and Class Members are "consumers" and/or "prospective consumers" as defined by N.J.S.A. 56:12-14 *et seq.*

5.    Defendant, Burlington Stores, Inc., is a Delaware corporation with its principal place of business located at 2006 Route 130 North, Burlington, New Jersey.  Defendant (and all of its subsidiary companies) is a "seller" as described in N.J.S.A. 56:12-14 *et seq.* Defendant operates a chain of retail stores and websites under the names Burlington Coat Factory and/or Burlington Stores.

6.    At all relevant times, Defendant sold consumer products by means of its website, www.burlingtoncoatfactory.com in the State of New Jersey, to citizens of other states and countries utilizing unfair, one-sided provisions contained in its "Terms of Use" consumer contract which violate New Jersey law.

7.    Defendant markets its goods and services throughout the world from the State of New Jersey by means of its website and corporate headquarters operation located in the State of New Jersey. Defendant also maintains and operates various retail stores and warehouse and distribution facilities

2

located in the State of New Jersey. As such, New Jersey courts maintain a significant interest in regulating Defendant's conduct which emanates from New Jersey.

JURISDICTION AND VENUE

8.      Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d), because members of the proposed Class are citizens of states different from Defendant's home state, there are more than 100 Class Members, and the amount in-controversy exceeds $5,000,000, exclusive of interest and costs.

9.      This Court has jurisdiction over the Defendant because Defendant is physically present in the State of New Jersey and also has sufficient minimum contacts with New Jersey and/or otherwise intentionally avails itself of the laws and markets of New Jersey, through the promotion, sale, marketing and distribution of its goods and services in New Jersey, to render the exercise of jurisdiction by the New Jersey courts permissible.

10.     Venue is proper in this District under 28 U.S.C. 1391(b) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district and/or because the Defendant is subject to personal jurisdiction in this district.

FACTUAL ALLEGATIONS

11. Defendant markets a variety of consumer products (particularly apparel) used for personal, family or household purposes throughout the world, via its website, www.burlingtoncoatfactory.com.

12.     Plaintiff and Class Members purchased consumer products from Defendant's website and/or were prospective consumers otherwise displayed and/or offered the "Terms of Use" on

3

Defendant's website. Their rights with respect to the products were purportedly governed by a website document entitled "Terms of Use".

13.    The "Terms of Use" purport to be a binding agreement between Defendant and all parties who use the website and/or purchase any of the products available on Defendant's website, as shown below.

"Terms of Use. Welcome to BurlingtonCoatFactory.com. Burlington Coat Factory Direct Corporation, a subsidiary of Burlington Coat Factory Warehouse Corporation (the "Company"), provides BurlingtonCoatFactory.com (or this "Site") as a service to its customers. Please read the Terms of Use that follow (this "Agreement") as they govern your use of BurlingtonCoatFactory.com. **If you use this Site, you unconditionally agree to follow and be bound by the Terms of Use** (emphasis added). If you "bookmark" a portion of this Site and bypass this Agreement, you still will be bound by the Terms of Use. BurlingtonCoatFactory.com reserves the right to change the Terms of Use without prior notice to you. If any portion of the Terms of Use is invalid, void, or not enforceable for any reason, that specific portion of the Terms of Use will be invalid but that will not affect the enforceability of the remainder of the Terms of Use. If you use this Site after any changes in the Terms of Use, you thereby agree to be bound by the changes. Please review the Terms of Use often as they may change from time to time. If you cannot act in accordance with the Terms of Use, please do not use this Site".

The binding provisions in the "Terms of Use" purport to impose illegal conditionsupon customers who visit Defendant's website and/or purchase products from the site.

14.    Despite clear law to the contrary, Defendant's "Terms of Use" purport to deprive Plaintiffs of their legal rights to pursue a remedy for harms arising from Defendant's tortious acts. Similarly, the "Terms of Use" purport to absolve Defendant of its responsibility to refrain from creating an unreasonable risk of harm to consumers and protecting against the unlawful acts of third parties.

4

15.     The "Terms of Use" also purport to absolve Defendant from any liability for manufacturing or selling dangerous or substandard products. Likewise, under the "Terms of Use", it appears that Plaintiffs are inappropriately barred and/or limited in seeking damages for injuries occurring from Defendant's unsafe products.

16.     All of these provisions violate the TCCWNA.

A.  Terms of Use Which Purport to Exculpate Defendant From Liability for Any and All Tortious Actions and Purport to Deny Plaintiffs Grounds for Redress Violate the TCCWNA.

17.     New Jersey law specifically prohibits the type of exculpatory clause contained in Defendant's "Terms of Use". Exculpatory provisions are disfavored by New Jersey law because "they undermine one purpose of tort law, which is to deter careless behavior by a party in the best position to prevent injuries in the first place." *See* Martinez-Santiago v. Public Storage, 38 F.Supp.3d 500, 512-513 (DNJ, 2014) ("[h]ere, the exculpatory provision purports to hold [defendant] harmless for most losses incurred by consumers, except those that are the direct result of [defendant's] fraud or willful conduct. Although Plaintiff plausibly pleads that such a broad exculpatory provision is not permitted under New Jersey law, the provision purports to be enforceable in the lease agreement. Plaintiff states a valid claim that this is the kind of provision that TCCWNA was designed to address."); "Even if unambiguous, it is well-established that exculpatory contracts will not be enforced where they are contrary to public policy (citations omitted)". Marcinczyk v. State of New Jersey Police Training Comm 'n, 203 N.J. 586, 593 (2010).

18.     Defendant purports to disclaim all liability:

**Neither Burlington Coat Factory Direct Corporation nor the Company is in any way liable or responsible for any information appearing on any other website. Burlington Coat Factory Direct Corporation does not, however, warrant that descriptions of products or other Content of this Site are accurate, complete, reliable, current, or error-free.**

5

**DISCLAIMER OF WARRANTIES**

YOU AGREE THAT YOU ARE USING THIS SITE AT YOUR SOLE RISK ON AN "AS IS" AND "AS AVAILABLE" BASIS. BURLINGTON COAT FACTORY DIRECT CORPORATION MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE OPERATION OF THIS SITE OR THE INFORMATION, CONTENT, MATERIALS, OR PRODUCTS INCLUDED ON THIS SITE.

TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, BURLINGTON COAT FACTORY DIRECT CORPORATION DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

BURLINGTON COAT FACTORY DIRECT CORPORATION DOES NOT WARRANT THAT THIS SITE, ITS SERVERS, OR E-MAIL SENT FROM BURLINGTONCOATFACTORY.COM ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS. CERTAIN STATE LAWS DO NOT ALLOW LIMITATIONS ON IMPLIED WARRANTIES OR THE EXCLUSION OR LIMITATION OF CERTAIN DAMAGES. IF THESE LAWS APPLY TO YOU, SOME OR ALL OF THE ABOVE DISCLAIMERS, EXCLUSIONS, OR LIMITATIONS MAY NOT APPLY TO YOU, AND YOU MIGHT HAVE ADDITIONAL RIGHTS.

**Limitation of Liability**

NEITHER BURLINGTONCOATFACTORY.COM, NOR BURLINGTON COAT FACTORY DIRECT CORPORATION, NOR ANY OF ITS AFFILIATES, EMPLOYEES, OFFICERS, DIRECTORS, AGENTS, VENDORS, OR SUPPLIERS SHALL UNDER ANY CIRCUMSTANCES OR UNDER ANY LEGAL OR EQUITABLE THEORY, WHETHER IN TORT, CONTRACT, STRICT LIABILITY OR OTHERWISE, BE LIABLE TO YOU OR TO ANY OTHER PERSON FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL LOSSES OR DAMAGES OF ANY NATURE ARISING OUT OF OR IN CONNECTION WITH THE USE OF OR INABILITY TO USE THE BURLINGTONCOATFACTORY.COM WEBSITE, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOST PROFITS, LOSS OF GOODWILL, LOSS OF DATA, WORK STOPPAGE, ACCURACY OF RESULTS, OR COMPUTER FAILURE OR MALFUNCTION, EVEN IF AN AUTHORIZED REPRESENTATIVE OF BURLINGTON COAT FACTORY DIRECT CORPORATION OR THIS SITE HAS BEEN ADVISED OF OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL THIS SITE, BURLINGTON COAT FACTORY DIRECT CORPORATION OR ANY OF ITS AFFILIATES BE LIABLE FOR ANY DAMAGES IN EXCESS OF THE FEES PAID TO THIS SITE BY YOU IN CONNECTION WITH YOUR USE OF THIS SITE DURING THE SIX MONTH PERIOD PRECEDING THE DATE ON WHICH THE CLAIM AROSE.

These provisions purport to bar Plaintiffs from asserting any cause of action against Defendant for its negligence or failure to exercise a basic standard of care in its dealings with consumers and/or prospective consumers. Likewise, the provisions purport to absolve Defendant of its legal responsibility to exercise reasonable care and avoid creating an unreasonable risk of harm to consumers.

6

19.     Under well-established New Jersey law, Defendant owes a duty of care to Plaintiffs to avoid creating an unreasonable risk of harm. Plaintiffs harmed by Defendant's unreasonable conduct are entitled to collect damages. These provisions purport to remove Defendant's responsibility to act reasonably and purports to bar Plaintiffs from redress for a breach of Defendant's standard of care. This provision is contrary to New Jersey law. *See, e.g.* "We hold that a real estate broker has a duty to ensure through reasonable inspection and warning the safety of prospective buyers and visitors who tour an open house". <u>Hopkins v. Fox & Lazo Realtors</u>, 132 N.J. 426, 448 (1993).

20.     As such, the exculpatory clause violates the TCCWNA.

B.    <u>Terms of Use Which Purport to Deny Rights, Responsibilities and Remedies Under the New Jersey Products Liability Act ("NJPLA") Violate the TCCWNA</u>

21.     Additionally, the above-referenced and quoted provision purports to absolve Defendant of its responsibility to manufacture and sell safe products. The provision further purports to bar Plaintiffs from exercising their legal right to seek redress under the NJPLA. *See*, N.J.S.A. 2A:58C-l, *et seq.*

22.     The NJPLA was passed based on Legislative findings "that there is an <u>urgent need</u> for remedial legislation to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products, including certain principles under which liability is imposed and the standards and procedures for the award of punitive damages." N.J.S.A.2A:58C-1 (emphasis added).

23.     Under the NJPLA, "[a] manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the

7

evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: (a.) deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or (b.) failed to contain adequate warnings or instructions, or (c.) was designed in a defective manner." N.J.S.A.2A:58C-2.

24.     Plaintiffs who prevail under the NJPLA are entitled to recover any and all damages resulting from their injury, including punitive damages if properly demonstrated. *See e.g.* N.J. Civ. Jury Charge 1.12(0); Fischer v. Johns-Manville Corp., 103 N.J. 643, 670-71 (1986) ("punitive damages are available in . . . strict products liability actions when a manufacturer is (l) aware of or culpably indifferent to an unnecessary risk of injury, and (2) refuses to take steps to reduce that danger to an acceptable level. This standard can be met by a showing of 'a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences.' ') (internal citations omitted).

25.     Given the clear danger of unsafe products as recognized by the New Jersey Legislature, to purport to deny consumers a cause of action for harm arising from a potentially unsafe product is contrary to established New Jersey law. Additionally, there would be a chilling effect if consumers and prospective consumers were led to believe such exculpatory provisions are enforceable. Defendant would be able to purport to contract away its statutorily fixed obligation to refrain from producing dangerous products. Likewise, Plaintiffs would mistakenly believe they are

barred from seeking relief for serious injury arising from defective products. This would result in a reduction in costs for unscrupulous manufacturers and sellers while companies creating safe products would be burdened with a higher cost of doing business. The ultimate effect would be a proliferation of unsafe products and injured consumers believing they have no grounds for redress. Clearly, this was not the Legislature's intent when the NJPLA was enacted.

26.     It was, however, the Legislature's intent in drafting the TCCWNA to prevent against this type of harm. A provision that purports to absolve Defendant of liability in contract, tort, or otherwise resulting from its dangerous products is unlawful. Plaintiffs have a legal right under the NJPLA to bring suit against manufacturers and sellers of dangerous products. Likewise, Defendant has a statutorily imposed duty to refrain from introducing dangerous products into the marketplace and is liable for same.

27.     These "Terms of Use" therefore violate the TCCWNA.

C.  Terms of Use Which Purport to Deny Rights. Responsibilities and Remedies Under the New Jersey Punitive Damages Act ("NJPDA") Violate the TCCWNA.

28.     Additionally, Defendant purports to deprive Plaintiffs of their remedies under the NJPDA. N.J.S.A.2A:15-5.9 *et seq.*

29.     As set forth above, Defendant represents that persons using its website are barred from seeking redress against Defendant.

9

30.    This language purports to take away Plaintiffs clearly established right under the NJPDA to pursue punitive damages against defendants who with actual malice or wanton and willful disregard cause harm to foreseeable plaintiffs. N.J.S.A. 2A:15-5.12.

31.    Plaintiffs' right to pursue punitive damages against defendants who are recklessly indifferent to the consequences of harm to others is well recognized by New Jersey common law. *See, e.g.* Smith v. Whitaker, 160 N.J. 221, 241 (1999); Nappe v. Anschelewitz, Barr, Ansell & Bonelio, 97 N.J. 37, 49 (1984); *see also* Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)(noting that to justify punitive damages award defendant's conduct must be reckless); DiGiovanni v. Pessel, 55 N.J. 188, 190 (1970)(noting punitive damages may be justified by defendant's "conscious and deliberate disregard of the interests of others")(quoting William Prosser, *Handbook on the Law of Torts*  (2d ed. 1955)).


32.    A provision that purports to bar Plaintiffs from exercising their rights under the NJPDA is therefore unlawful. Likewise, such a provision is shocking to the conscience in that it purports to absolve Defendant of its duty to refrain from willfully and/or recklessly creating an unreasonable risk of harm to others.

33.    These provisions purport to insulate Defendant even if an accusation of punitive damages is specifically pled in a complaint as required by N.J.S.A.2A:15-5.l and Defendant is expressly made aware its conduct is malicious or willfully and/or wantonly reckless.

10

34.    Such a provision is unlawful under the NJPDA in that it purports to deny Plaintiffs their legal rights under the Act. Additionally, the provision purports to absolve Defendant of any accountability in the form of punitive damages even if expressly made aware that its conduct is expressly malicious or wantonly and/or willfully reckless.

35.    This provision thereby violates the TCCWNA.

THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

D.       Provisions Which Purport to Deny Rights, Responsibilities and Remedies
         Under the Uniform Commercial Code ("U.C.C.") Violate the TCCWNA

36.      Defendant purports to bar Plaintiffs from seeking damages arising from the use of Defendant's products and services under any circumstances.

37.      These provisions purport to deny Plaintiffs their rights and remedies under the U.C.C. to recover damages for economic harm and/or harm to property.

38.      The NJ U.C.C. provides "a comprehensive system for determining the rights and duties of buyers and sellers with respect to contracts for the sale of goods[.]" Corestar Int'l Pte Ltd v. LPB Communications Inc., 513 F. Supp. 2d 107, 16 (DNJ, 2007); N.J.S.A.12A 1-101, *et seq.*

39.      Buyers who purchase commercial goods from merchants have a litany of remedies under the N.J. U.C.C. when a seller breaches his or her duty. These remedies include damages for economic and property damage. N.J.S.A.12A:2-701, *et seq.* Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 581-82 (1985) ("the U.C.C. 'is generally regarded as the exclusive source for ascertaining when a seller is subject to liability for damages if the claim is based on intangible economic loss not attributable to physical injury to person or harm to a tangible thing other than the defective product itself.'") (quoting W. Prosser & W. Page Keeton, Handbook of the Law of Torts, 680 (5th ed. 1984)).

40.      Defendant purports to strip Plaintiffs of their legal rights under the U.C.C. to seek damages for a breach of contract claim against Defendant.

12

Additionally, these provisions purport to absolve Defendant of its responsibility to refrain from breaching contract agreements and/or causing property and/or economic harm to Plaintiffs under the U.C.C.

41.    This clause is thereby unlawful and violates the TCCWNA.

E.    Provisions Which Purport to Remove Defendant's Responsibility for Certain Acts of Third Parties and Purport to Bar Plaintiffs Grounds for Redress Violate the TCCWNA

42.    The "Terms of Use" violate New Jersey law in that they purport to absolve Defendant of their duty to protect customers against harm arising from third-party acts. *See, e.g.* Butler v. Acme Markets, Inc., 89 N.J. 270, 284 (1982) (upholding duty imposed on business Owner to protect against third-party criminal acts since, "the business invitor is in the best position to provide either warnings or adequate protection for its patrons... [and] the public interest lies in providing a reasonably safe place for a patron to shop[.]"); Trentacost v. Brussel, 82 N.J. 214, 231 (1980) (landlord owes duty to tenant to provide reasonable security measure protecting against criminal acts of third-parties).

43.    Defendants have a clear duty under the common law to provide a safe environment for their customers to shop. The fact that Defendants sell their products online should not absolve them of their well-defined duty to protect customers from the criminal acts of third-parties. Indeed, in today's modern-society the internet has become the shopping mall and third-party

computer hackers the pickpockets. *See*, <u>Butler</u>, *supra*.

44.     The Federal Trade Commission ("FTC") and Federal Communications

Commission ("FCC") have promulgated standards for businesses to safeguard against the

disclosure of sensitive consumer information to third-party criminal hackers. According to the

FTC, "it is almost impossible to be in business and not collect or hold personally identifying

Information, names and addresses, Social Security numbers, credit card numbers, or other

account numbers — about your customers, employees, business partners, students, or patients. If

this information falls into the wrong hands, it could put these individuals at risk for identity

theft."[2] Accordingly, the FTC instructs business owners to take safeguards to prevent against the

disclosure of customer information to criminal third-parties and to follow state and federal

notification requirements if and/when a breach occurs. *Id.*


45. Likewise, the FCC, in connection with the Department of Homeland Security, the

National Cyber Security Alliance and The Chamber of Commerce promulgates a set of standards

for business owners to follow to protect consumer information from third-party criminal hackers.

According to the FCC, businesses are under an obligation "to do more to protect against growing

cyber threats."[3] How a business "handle[s] and protect[s] . . . data is central to the security of

[the] business and the privacy expectations of customers, employees and partners." *Id.* at PDS-l.

Under the FCC's guidelines "[a]ll companies should develop and maintain clear and robust

policies for safeguarding critical business data and sensitive information[.]" *Id.* at PDMI-I.

46. Indeed, the FCC explicitly acknowledges, "[p]rivacy is important for your business

and your customers. Continued trust in your business practices, products and secure handling of

your clients' unique information impacts your profitability. Your privacy policy is a pledge to your customers that you will use and protect their information in ways that they expect and that adhere to your legal obligations . . . [customers expect you to make their privacy a priority . . you will be held accountable for what you claim and offer in your policy." *Id.* at PDS-2. Indeed, emerging technology offers "cyber criminals many new ways to victim your business, scam your

---

2   Federal Trade Commission, *Information Compliance and The Risk of Identity Theft* Guidance for Your Business (2004), https://www.ftc.gov/tips-advice/business-center/guidance/information.

3   Federal Communications Commission, Cyber Security Planning Guide, https://transition.fcc.gov/cyber/cyberplanner.pdf.

customers and hurt your reputation." *Id.* at SF-I. As such, business owners are directed to implement various action items including training plans for employees, protections against online fraud, protections against malware and fake antivirus offers and other malicious software. *Id.* at SF-I to SF-3.

47.   In no uncertain terms, the FCC warns business owners of the consequences of failing to take proper security measures to protect against third-party criminal acts:

**Website security is more important than ever. Web servers, which host the data and other content available to your customers on the Internet, are often the most targeted and attacked components of a company's network. Cyber criminals are constantly looking for improperly secured websites to attack, while many customers say website security is a top consideration when they choose to shop online. As a result, it is essential to secure servers and the network infrastructure that supports them. The consequences of a security breach are great: loss of revenues, damage to credibility, <u>legal liability</u> and loss of customer trust.**

*Id.* at WS-I. Additionally, the FCC endorses the use of Operational Security measures to identify critical protected information, analyze threats to and vulnerability of that information and

15

countermeasures available to mitigate those threats. *Id.* at OS-I. Explicitly, the FCC states that if a business "accepts payments by credit or debit card[s], it is important to have security steps in place to ensure . . . customer information is safe." *Id.* at PC-I.

48.     With these standards in mind, the United States District Court, District of New Jersey recently upheld a claim against business owners who failed "to implement reasonable and appropriate security measures" protecting their online clients' information from data breaches effectuated by third-party hackers. F.T.C. v. WyndhamWorldwide Corp., 10 F.Supp.3d 602, 608-09 (DNJ, 2014) (denying defendant online hotel company's motion to dismiss and agreeing with the FTC that online companies' substandard online security measures were cause in fact of plaintiffs' injuries — despite intervening acts of third-party hackers.).

49.     Additionally, the New Jersey Legislature has devoted an entire statutory regime towards regulating online businesses safeguarding of customers' personal information from third party criminal hackers. N.J.S.A.56:8-161, *et seq.* Failure to comply with the statutory mandates and take proper safeguards to notify and protect against the dissemination of customers' personal information — even if disclosed as the result of third-party criminal acts — is a tortious offense and actionable under the New Jersey Consumer Fraud Act. N.J.S.A. 56:8-3; 56:8-3.1.

50.     Despite the controlling statutes, common law and FTC and FCC guidelines, Defendant purports to absolve itself of the responsibility to take reasonable measures and statutorily fixed measures to protect consumers from third-party criminal hackers.

16

51.     Defendant includes in its "Terms of Use" the above language relating to Disclaimer of Warranties, Indemnification and Limitations of Liability.

52.     The Legislature, Courts and Regulatory Agencies have identified steps Defendants are required to take to protect consumers from harms perpetuated by third-party criminals. The above language purports to absolve Defendants of these aforementioned responsibilities. Likewise, the provision purports to bar Plaintiffs from seeking redress under the common law or N.J.S.A. 56:8-161, *et al.* for Defendants failure to protect against third-party criminal acts.

53.     Defendants have a duty to take reasonable steps to prevent harm to consumers and prospective consumers arising from third-party criminal acts. Plaintiffs have a means of redress for Defendants failure to take steps to protect against harms perpetuated by third-party criminals. This clause purports to take away these rights and responsibilities and thus violates the TCCWNA.

Defendant's "Terms of Use" Violate N.J.S.A. 56:12-15

54.     New Jersey consumer protection laws, including the TCCWNA, are designed to protect consumers and potential consumers from the type of unconscionable and illegal provisions contained in Defendant's "Terms of Use" as set forth above.

55.     Defendant's imposition upon consumers and prospective consumers of the above described provisions in its "Terms of Use" violates certain common law standards and statutory provisions, including, but not limited to the New Jersey Product Liability Law, New Jersey Punitive Damages Act, Uniform Commercial Code, N.J.S.A.12A:2-725, N.J.S.A.2A:14-1, and N.J.S.A.2A:14-2, and thus violates TCCWNA, most particularly N.J.S.A. 56:12-15.

17

56.    Plaintiff therefore brings the statutory claim alleged herein to halt Defendant's continued use of the illegal language in its disclaimers of liability provisions included in the "Terms of Use" on Defendant's website, and to impose those remedies provided for in the TCCWNA.

57.  Defendant's "Terms of Use" also prevents consumers from properly exercising their clearly established legal rights by shortening the statute of limitations on their claims to six months. It states:

**IN NO EVENT WILL THIS SITE, BURLINGTON COAT FACTORY DIRECT CORPORATION OR ANY OF ITS AFFILIATES BE LIABLE FOR ANY DAMAGES IN EXCESS OF THE FEES PAID TO THIS SITE BY YOU IN CONNECTION WITH YOUR USE OF THIS SITE DURING THE SIX MONTH PERIOD PRECEDING THE DATE ON WHICH THE CLAIM AROSE.**

58. Plaintiff therefore brings the statutory claim alleged herein to halt Defendant's continued use of the illegal provision shortening the statute of limitations included in the "Terms of Use" on Defendant's website, and to impose those remedies provided for in the TCCWNA. By way of example, N.J.S.A. 2A:14-1 provides for a six year statute of limitations with respect to TCCWNA claims, torts, etc.

Defendant's "Terms of Use" Violates N.J.S.A. 56:12-16

59.    N.J.S.A.56:12-16 (TCCWNA) states that "no consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey."

60.    The "Terms of Use" contains language stating that**:  If any portion of the Terms of Use is invalid, void, or not enforceable for any reason, that specific portion of the Terms**

18

of Use will be invalid but that will not affect the enforceability of the remainder of the Terms of Use. ***TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, BURLINGTON COAT FACTORY DIRECT CORPORATION DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

The        remainder        of        this        page        is        intentionally        left        blank

19

These provisions explicitly violate N.J.S.A.56:12-16 in that they state that certain provisions may be void, unenforceable or inapplicable, without specifying whether the provision is or is not void, unenforceable and/or inapplicable in New Jersey.

61.    The above provision in the "Terms of Use" which purports to shorten the statute of limitations to six months also violates N.J.S.A.56:12-16 in that it attempts to waive the Plaintiff's rights under the Act.

CLASS ACTION ALLEGATIONS

62.    Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and all members of the following Class:

**All consumers to whom were offered, given, displayed or entered into the "Terms of Use" on Defendant's website, www.burlingtoncoatfactory.com, during the applicable statute of limitations through the date of final judgment in this action.**

63.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment.

64.    Specifically excluded from the proposed Class is Defendant, its officers, directors, and employees. Also excluded from the proposed Class is the Court, the Court's immediate family and Court staff.

FRCP 23(a) Factors

65.    Numerosity. Membership in the Class is so numerous that separate joinder of each member is impracticable. The precise number of Class Members is unknown at this time but can be readily determined from Defendant's records. Plaintiff reasonably estimates that there are thousands of persons in the Class.

20

66.     Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

67.     Typicality. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class purchased goods and/or services from Defendant's website, www.burlingtoncoatfactory.com, and were subjected to the illegal and predatory exculpatory provisions on that website.

68.     Existence and Predominance of Common Questions of Law and Fact. There are central and substantial questions of law and fact common to all Class Members that control this litigation and predominate over any individual issues. Included within the common questions are the following:

a)  Whether Defendant includes on its website, www.burlingtoncoatfactory.com, a contract entitled "Terms of Use" that includes provisions entitled "DISCLAIMER of WARRANTIES", "INDEMNIFICATION" and "LIMITATION OF LIABILITY",

b)  Whether the "DISCLAIMER of WARRANTIES", "INDEMNIFICATION" and "LIMITATION OF LIABILITY" provisions of Defendant's "Terms of Use" contains exculpatory

language which purports to disclaim liability for virtually any claim under tort or negligence or otherwise arising from their purchase of goods or services from the website, and purportedly absolves Defendant from any liability for intentional tortious conduct and from any liability for dangerous or substandard products;

c)   Whether the purportedly exculpatory language in the "DISCLAIMER of WARRANTIES", "INDEMNIFICATION" and "LIMITATION OF LIABILITY" provisions of Defendant's "Terms of Use" violates New Jersey statutory and common law;

d)   Whether the purportedly exculpatory language in the "DISCLAIMER of WARRANTIES", "INDEMNIFICATION" and "LIMITATION OF LIABILITY" provisions of Defendant's "Terms of Use" violates New Jersey's TCCWNA, N.J.S.A.56:12-15 and N.J.S.A.56:12-16;

e)   Whether the failure to identify which provisions are void, unenforceable or inapplicable in New Jersey violates New Jersey TCCWNA, N.J.S.A. 56:12-16;

f)   Whether the Class is entitled to relief pursuant to N.J.S.A. 56:12-17, terminating the "DISCLAIMER of WARRANTIES", "INDEMNIFICATION" and "LIMITATION OF LIABILITY" provisions contained in Defendant's "Terms of Use";

g)   Whether Plaintiff and Class Members are entitled to a civil penalty of not less than $100 for each violation of the TCCWNA pursuant to N.J.S.A. 56:12-17;

h) Whether Plaintiff and Class Members are entitled, pursuant to N.J.S.A. 56:12-17, to reasonable attorneys' fees and court costs, and in what amount; and

i) Whether Plaintiff and Class Members are entitled to declaratory and/or other equitable relief.

FRCP

69. Defendant has acted on grounds generally applicable to the entire Class, thereby warranting final relief pursuant to N.J.S.A.56:12-17, whereby the above-referenced language in the "DISCLAIMER of WARRANTIES", "INDEMNIFICATION" and "LIMITATION OF LIABILITY" provisions of the "Terms of Use" would be terminated, which would be appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

70. Relief under N.J.S.A. 56:12-17, whereby the above-referenced language in the "DISCLAIMER of WARRANTIES", "INDEMNIFICATION" and "LIMITATION OF LIABILITY" provisions of the "Terms of Use" would be terminated, is necessary to prevent further predatory and illegal business practices by Defendant. Money damages alone will not afford adequate and complete relief, and the relief sought is necessary to restrain Defendant from continuing to commit its predatory and illegal policies.

23

71.     Common Issues Predominate: As set forth in detail herein above, common issues of fact and law predominate because all of Plaintiff's TCCWNA claims are based on a common course of conduct. Whether the above-referenced language in Defendant's "DISCLAIMER of WARRANTIES", "INDEMNIFICATION" and "LIMITATION OF LIABILITY" provisions contained in its "Terms of Use" imposes illegal burdens on consumers is an issue common to all members of the Class and is the predominant issue, and Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

72.     Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a)  Given the size of the claims of individual Class Members, as well as the resources of Defendant, few, if any, could afford to seek legal redress individually for the wrongs alleged herein;

b)  This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort and expense, and will ensure uniformity of decisions;

c) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments, and would create a burden on the court system;

d) Without a class action, Class Members will continue to suffer as a consequence of Defendant's illegal and predatory conduct, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and the Classes are entitled to appropriate civil penalties. This action presents no difficulties that will impede its management by the Court as a class action.

73. Certification is also warranted under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final relief pursuant to N.J.SA.56:12-17 appropriate with respect to the Class as a whole.

CLAIM FOR RELIEF

Based on the foregoing allegations, Plaintiffs' claims for relief include the following:

COUNT 1

Violations of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA")

N.J.S.A. 56:12-15

74. Plaintiff hereby incorporates by reference each of the preceding and subsequent paragraphs of this complaint as though fully set forth herein.

75.     The TCCWNA declares "No seller ... shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller…, as established by State or Federal Law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed." N.J.S.A.56:12-15.

76.     Defendant is a "seller" within the meaning of N.J.S.A. 56:12-15.

77.     Plaintiff is a "consumer" as contemplated by N.J.S.A. 56:12-15.

78.     Defendant's "Terms of Use" constitute a consumer contract displayed and/or offered by seller to consumers.

79.     The "Terms of Use," as detailed above, include provisions that purport to violate the legal rights of consumers and/or responsibility of the seller.

80.     Defendant has included on its website, www.burlingtoncoatfactory.com, language in the "DISCLAIMER of WARRANTIES", "INDEMNIFICATION" and "LIMITATION OF LIABILITY" provisions of the "Terms of Use" that purports to disclaim liability for virtually any claim under tort or negligence or otherwise arising from their use of the website and/or purchase of goods or services from the website.

81.     Such exculpatory provisions are disfavored by New Jersey law because "they undermine one purpose of tort law, which is to deter careless behavior by a party in the best position to prevent injuries in the first place." *See*, Martinez-Santiago, *supra*, 38 F.Supp.3d at 512-13. Moreover, this provision purports to deprive Plaintiffs of their right to a cause of action for damages suffered as a result of any unreasonable risk of harm created by Defendant. Likewise, the provision purports to absolve

26

Defendant of its legal responsibility to exercise due care and refrain from creating an unreasonable risk of harm to consumers. Such a provision is contrary to well-established principles of common law and contrary to the TCCWNA.

82.     In addition, these "Terms of Use" purport to absolve Defendant of its responsibility to manufacture and/or sell a safe product. Likewise, the "Terms of Use" purport to bar Plaintiffs from asserting a claim under the NJPLA for injuries suffered as a result of Defendant's dangerous products. The "Terms of Use" are contrary to the NJPLA and defies the Legislature's intent in attempting to address the "urgent need" to protect consumers from dangerous products. *See* N.J.S.A.2A:58C-l. Notwithstanding the chilling effect on the marketplace as a whole were this provision to be found lawful, this provision defies the clear language of the NJPLA and thus violates the TCCWNA.

83.     Further, the "Terms of Use" purport to absolve Defendant of its duty as a business to protect consumers and prospective customers from the illegal acts of third parties. Defendant has a duty under the common law, N.J.S.A.56:8-161, *et seq.* and various Federal Regulatory Standards to protect customers from the illegal acts of third parties. *See* Butler, *supra* 89 N.J. 284 (business owner has a duty to protect against third-party criminal acts since, "the business invitor is in the best position to provide either warnings or adequate protection for its patrons . . . [and] the public interest lies in providing a reasonably safe place for a patron to shop[.]"); Wyndham Worldwide Corp., 10 F.Supp.3d 608-09 (Plaintiff had cause of action against online business since substandard internet security measures were cause in fact of plaintiffs' injuries despite intervening acts of third-party hackers.); N.J.S.A. 56:8-163.

27

84.     Defendant purports to do away with its responsibility to take reasonable steps to ensure security measures are in place to protect Plaintiffs and their personal information from the criminal acts of third-party hackers. Likewise, Defendant purports to deny Plaintiffs' their legal right to pursue a cause of action against Defendants for their failure to take basic reasonable steps required under the common law, N.J.S.A. 56:8-161, *et al.* and applicable regulatory schemes. This provision is unlawful and violates the TCCWNA.

85.     Moreover, the "Terms of Use" purport to bar Plaintiffs from seeking punitive damages for any and all harm caused by Defendant. Such a provision is contrary to the NJPDA. This provision purports to absolve Defendant of its legal obligation to refrain from maliciously and/or with wanton disregard and/or willfulness, creating an unreasonable risk of harm to consumers and prospective consumers. Likewise, the provision purports to bar Plaintiffs who adequately plead and demonstrate punitive damages from pursuing same. This provision violates the TCCWNA.

86.     Also, the "Terms of Use" purport to bar Plaintiffs from exercising their legal rights under the U.C.C. and dually purport to absolve Defendant of its legal duty to refrain from causing economic damage and/or property damage to consumers and prospective customers. By purporting to bar Plaintiffs from seeking damages, whether in tort or in contract, Defendant violates the TCCWNA.

87. Also, the "Terms of Use" attempts to illegally impose a six month statute of limitations upon the Plaintiffs.

88.     Plaintiff reserves the right to identify additional provisions of the law violated by Defendant as further investigation and discovery warrant.

28

COUNT 11
Violations of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act
("TCCWNA")
N.J.S.A. 56:12-16

89.     Plaintiff hereby incorporates by reference each of the preceding and subsequent paragraphs of this complaint as though fully set forth herein.

90.     The TCCWNA declares **"No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; provided however, that this shall not apply to warranties."** N.J.S.A.56:12-16.

91.     The "Terms of Use" constitute a consumer contract displayed and/or offered by seller to consumers and/or prospective consumers as described in N.J.S.A.56:12-1, as agreement to the terms are required. **Please read the Terms of Use that follow (this "Agreement") as they govern your use of BurlingtonCoatFactory.com. If you use this Site, you unconditionally agree to follow and be bound by the Terms of Use. If you "bookmark" a portion of this Site and bypass this Agreement, you still will be bound by the Terms of Use**.

92.     Defendant has included in its "Terms of Use" language stating that **TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, BURLINGTON COAT FACTORY DIRECT CORPORATION DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.** Additionally, **BurlingtonCoatFactory.com reserves the right to change the Terms of Use without prior notice to you. If any portion of the Terms of Use is invalid, void, or not enforceable for any reason, that specific portion of the Terms**

29

**of Use will be invalid but that will not affect the enforceability of the remainder of the Terms of Use. If you use this Site after any changes in the Terms of Use, you thereby agree to be bound by the changes. Please review the Terms of Use often as they may change from time to time.**

93.     Such provisions are not a warranty as they are not a guarantee or promise providing assurance to either party.

94.     Accordingly, these terms are unlawful under N.J.S.A. 56:12-16 in that they state certain provisions are void, unenforceable and/or inapplicable in certain jurisdictions without specifying whether the provisions are void, unenforceable and/or inapplicable in New Jersey.

95.     Pursuant to N.J.S.A. 56:12-17, Plaintiff and the Class are entitled to (a) a civil penalty of not less than $100, payable to Plaintiff and each Class Member, for each violation of the TCCWNA; and (b) reasonable attorneys' fees and court costs.

96.     Plaintiff reserves the right to identify additional provisions of the law violated by Defendant as further investigation and discovery warrant.

<u>DEMAND/PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff on behalf of herself and members of the Class defined herein, prays for judgment and relief as follows:

A.     An Order certifying that this action may be maintained as a class action;

B.     Judgment awarding to Plaintiff and Class Members not less than $100 for each violation of the TCCWNA;

30

C.      An Order terminating the above-referenced language in the provisions of the

"Terms of Use" set forth on Defendant's website, www.burlingtoncoatfactory.com, and ordering

Defendant to remove said terms from its website;

D. An Order appointing Plaintiff as Class Representative and appointing her Counsel as counsel for

the Class:

E.      Plaintiff's reasonable attorneys' fees and court costs; and

F.    Such other and further relief as the Court may deem necessary and appropriate.

<u>JURY DEMAND</u>

Plaintiff and Class Members, pursuant to Fed. R Civ. P. 38(b), hereby demand trial by jury.


Respectfully submitted,
Avi Naveh, Esq.
By:
_____ s/Avi Naveh
Avi Naveh, ESQ.

Avi Naveh, Esq. NJ Bar No.1938-2004
32-02 Norwood Dr.,
Fair Lawn, New Jersey 07410
Phone: (646) 881-4471
avi@navehlaw.com
Jeffrey M. Gottlieb, Esq. (JG-7905) *

Dana L. Gottlieb, Esq. (DG-6151) *

Gottlieb & Associates

150 East 18th Street

Suite PHR

New York, NY 10003

NYJG@aol.com

danalgottlieb@aol.com

*Pro hac vice* to be filed

Attorneys        for        Plaintiff

Dated: April 13, 2016